JEROME TANENBAUM, Plaintiff, *v.* REMFORD CORPORATION, Defendant.

Supreme Court, Special Term, New York County, August 9, 1945.

*Frank, Weil & Strouse* for plaintiff.

*Schimmel & Gadofsky* for defendant.

PECK, J. This is a motion by the plaintiff for summary judgment for the full amount of plaintiff's claim in the sum of $4,387.50, or, in the alternative, for partial summary judgment for the sum of $3,000. The motion for partial summary judgment is granted as a matter of law, and the motion for full judgment is denied because a triable issue of disputed facts exists as to the claim in excess of $3,000.

The action is for a brokerage commission which plaintiff claims he earned upon the execution of a lease, negotiated by plaintiff, between the defendant as lessor and a third party as lessee. The lease was made on January 4, 1945, for a term of ten years commencing February 1, 1946. The defense is that chapter 3 of the Laws of 1945, known as the Commercial Rent

Law (as amd. by L. 1945, ch. 315), which became effective three weeks after the execution of the lease, rendered the lease unenforcible because it enjoins the eviction of the present tenants of the property covered by the lease. Therefore, the answer alleges, defendant is unanswerable for the brokerage commission or at least the plaintiff's action is premature until the present tenants vacate the property and the lease becomes operative. The legal question thus presented is whether the subsequently enacted law, bearing upon the lease, affects the broker's claim to a commission.

The memoranda of the parties go into the law of impossibility of performance, an inviting field for research and discussion, but the court does not think that this law is applicable to this situation. Suffice it to say that the cases cited by the defendant all relate to the rights and obligations as between the parties to the contract rendered unenforcible, and not to the rights and obligations as between a party to the contract and a broker who brought the contract about.

The answer to the question presented on this motion lies in a correct understanding of the broker's undertaking and of what it is that he is paid for. The defendant practically takes the view that the broker underwrites the contract and guarantees his client the benefits of the contract. This is a misapprehension. It is the broker's function to bring the parties together and effect a meeting of their minds on the terms of a contract. When he has done that his job is finished and he is entitled to his compensation. Whether there is a subsequent default upon the part of the lessor or lessee or whatever happens to the lease cannot affect the broker's rights because of the nature of his completed services (Gross on Real Estate Brokers, § 228, p. 240).

The distinction between defendant's obligation on the contract to the other party and defendant's obligation to the plaintiff as broker, and the inappositeness of the cases cited by the defendant on impossibility of performance, are illustrated by the quotation from the Commercial Rent Law set forth in the answer: "No landlord shall be answerable in damages or otherwise for failure to give possession to a new tenant not in possession where the tenant in possession is permitted to hold over by virtue of any of the provisions of this act." (L. 1945, ch. 3, § 10.) This provision of the law exempts the defendant from liability for its failure to carry out the terms of the lease, but it does not affect defendant's liability to the plaintiff based not on any failure of the defendant to carry out the terms of

the lease, but based upon services rendered and completed by the plaintiff by the execution of the lease.

There are cases which hold that where a contract is illegal and the broker is a party to the illegality or acted with knowledge of the illegality, the broker may not recover his commission (*Markowitz* v. *Arrow Construction Co., Inc.,* 102 Misc. 532; *Slack* v. *Glenwood Sightseeing Bus Co.,* 181 Misc. 988). Contrariwise, where the broker's action is not tainted (*Shulman* v. *Kaplan,* 96 Conn. 303). All of these cases, however, were cases of an illegality existing at the time the contract was executed. Here, the alleged unenforcibility of the lease was not a factor existing at the time of its execution. A broker cannot be taken to assume the risk of any factor or event developing after the completion of the services for which he is engaged.

There are two other considerations which militate against defendant's position in this matter. The alleged unenforcibility of the lease is neither immediate nor absolute. The term of the lease is not to commence until February 1, 1946, and by that time the defendant may be able to make some arrangement with either the new tenant or the present tenant to avoid the problem. Also, the Commercial Rent Law continues only to July 1, 1946. True, it may be extended, but the uncertainty illustrates the speculative character of the defense. Plaintiff's performance and right to his commission do not include this speculation. The logic of the defendant's position would lead to the conclusion that a broker does not become entitled to his commission upon the execution of a lease, or even upon the commencement of the term of the lease, but only upon the completion of the term because until then the vicissitudes which bear upon the realization of the lease are not known. This rationalization of the defendant's position serves to illustrate its unreality and to emphasize the practical necessity and reason of the law that a broker's commission is earned when the lease is signed.

A second fact worthy of note on this motion is that the emergency rent legislation was in the offing when this lease was negotiated. That defendant was conscious of the probability of some such enactment, the difficulties which might ensue, and the nature of its obligation to the plaintiff, are indicated by defendant's letter to the plaintiff dated December 7, 1944: " You know, and I know the difficulties that exist today in making leases where the tenants are still in the space being rented, and all of our negotiations are subject to my making the proper arrangement with the existing tenant, which I

believe I can do. . Yet, I want you to know that no commission will be paid to you or shall be deemed due you until the lease with your people is actually signed because of these existing conditions." It is thus evident that defendant knew and assumed the risk threatened and understood that plaintiff's commission would be earned when the lease was "actually signed".