■ HELEN HECHT, Respondent, v. S. HERBERT MELLER et al., Appellants.— In an action by a real estate broker to recover commissions, the defendants appeal from a judgment of the Supreme Court, Westchester County, entered July 28, 1964 upon the court's opinion-decision, in the plaintiff's favor after the submission of the controversy upon an agreed statement of facts (CPLR 3222). Judgment reversed on the law, without costs, and submission dismissed, without costs. The findings of fact are affirmed. On May 30, 1963 a contract of sale of certain real property was entered into between defendants (as sellers) and certain purchasers procured by the plaintiff. The closing was to take place on August 1, 1963. The provisions of section 240-a of the Real Property Law (now General Obligations Law, § 5–1311) were applicable to the contract. Neither title nor possession was transferred to the purchasers. Thereafter, on July 20, 1963 the house on the property was destroyed by fire without fault of either the sellers or the purchasers. On July 30, 1963 the purchasers made demand for the return of their down payment and other expenses. The defendants repaid these sums to the purchasers. In our opinion, under these circumstances the plaintiff was not entitled to brokerage commissions. The defendants' consent to cancellation of the contract was a consent to an existing legal right in the purchasers. The contract was not consummated only because the purchasers availed themselves of the privilege or right, reserved to them under the provisions of section 240-a of the Real Property Law (written into the contract by operation of law and called to the attention of the parties by a footnote to the contract), to recede from the obligation to purchase should all or a material part of the property be destroyed without the purchasers' fault. That contingency happened; and it was not the fault of defendants that the contract was never closed or the transaction never consummated (*Condict* v. *Cowdrey,* 139 N. Y. 273; *Zittel & Sons* v. *Schwartz,* 192 App. Div. 353, 359; cf. *Wiesenberger* v. *Mayers,* 281 App. Div. 171, appeal withdrawn 306 N. Y. 732). Beldock, P. J., Ughetta and Hill, JJ., concur; Brennan and Hopkins, JJ., dissent and vote to affirm the judgment, with the following memorandum by Brennan, J., in which Hopkins, J., concurs: In April, 1963 plaintiff entered into an agreement with the defendant S. Herbert Meller in which the latter gave the plaintiff the sole and exclusive right and agency to sell a house owned by said defendant and his wife. Commission for the plaintiff as broker was to be 6%. On May 30, 1963, as a result of plaintiff's efforts as broker, a contract for the purchase and sale of the premises at an agreed price of $60,000 was executed between the defendants as sellers and Philip Kunhardt, Jr., and Katherine T. Kunhardt, as purchasers. The contract was on a standard printed form of the New York Board of Title Underwriters. *Inter alia,* it provided that " the parties agree that Helen Hecht of Mt. Kisco, New York, brought about this sale and the seller agrees to pay the commission at the rates established by the Board of Real Estate Brokers in the locality

where the property is situated." It may be noted at this juncture that had the plaintiff demanded her commission of $3,600 upon the execution of the contract or at any time thereafter prior to July 20, 1963, the defendants unquestionably would have been liable to pay it. Plaintiff had performed her part of the brokerage agreement when she produced a purchaser ready, able and willing to buy on the sellers' terms (*Van Vliet & Place* v. *Gaines,* 249 N. Y. 106; *Smith* v. *Peyrot,* 201 N. Y. 210; *Gilder* v. *Davis,* 137 N. Y. 504). Plaintiff did not, however, immediately demand her commission. On July 20, 1963, the residence on the property was substantially destroyed by fire without the fault of the defendants. The contract of purchase and sale contained no express provision as to risk of loss by fire; hence — as stated in a footnote to the contract — the provisions of section 240-a of the Real Property Law (now General Obligations Law, § 5–1311) were applicable. Pursuant to that statute, the purchasers voluntarily elected to and did exercise their legal right to rescind and cancel their written agreement to purchase the property and demanded the return of their down payment of $6,000 as well as the net cost of title insurance. In compliance with such demand, the defendants repaid the said sums. Thereafter, the plaintiff duly demanded of the defendants payment of the brokerage commission agreed upon, and defendants refused to pay the same. The plaintiff then brought this action alleging due performance on her part of all the conditions of the brokerage agreement and a consequent legal obligation on the part of the defendants to pay her commission. In my opinion, plaintiff is entitled to be paid. The applicable rule of law was stated long ago by the Court of Appeals in *Gilder* v. *Davis* (137 N. Y. 504, 506, *supra*) as follows: " The general rule is that when a broker, employed to negotiate a sale of real estate, brings to his employer a responsible purchaser willing to buy upon the terms prescribed he has earned his commissions. (*Mooney* v. *Elder,* 56 N. Y. 238; *Sibbald* v. *Iron Co.,* 83 *id.* 378; *Duclos* v. *Cunningham,* 102 *id.* 678; *Kalley* v. *Baker,* 132 *id.* 1.) Where the contract of sale is executed between the employer and the purchaser, the right of the broker to his commissions does not depend upon the performance of the contract by the purchaser. If from a defect in the title of the vendor, or from a refusal to consummate the contract on the part of the purchaser for any reason in no way attributable to the broker, the sale falls through, nevertheless the broker is entitled to his commissions, for the simple reason that he has performed his contract." (See, also, *Smith* v. *Peyrot,* 201 N. Y. 210, 214, *supra*; *Van Vliet & Place* v. *Gaines,* 249 N. Y. 106, 110, *supra*; *Tanenbaum* v. *Remford Corp.,* 185 Misc. 612, 614.) The view of the majority of this court that the foregoing rule is rendered inapplicable to the case at bar by reason of the provisions of section 240-a of the Real Property Law (now General Obligations Law, § 5–1311) is, in my opinion, untenable. At common law the risk of loss by fire between the time of contract and the time of closing, absent any agreement to the contrary, fell upon the contract vendee (*Sewell* v. *Underhill,* 197 N. Y. 168; *Reife* v. *Osmers,* 252 N. Y. 320, 324). Section 240-a of the Real Property Law was enacted to abrogate that rule by placing the risk of such loss on the contract vendor (*Heerdt* v. *Brand,* 272 App. Div. 143; *New York Med. Coll.* v. *15–21 East 111th St. Corp.,* 90 N. Y. S. 2d 591). There is no indication, however, either in the statute itself or in the Report of the Law Revision Commission (1936 Report of N. Y. Law Rev. Comm., pp. 757–780), that the Legislature intended thereby to interfere with a vendor's obligation to pay earned commissions under a separate brokerage agreement. That obligation is enforced throughout the great majority of jurisdictions, even though the vendor and vendee may mutually cancel the contract and

terminate their rights vis-a-vis each other (Ann. 74 ALR 2d 437, 459; Ann. 51 A. L. R., 1390, 1392). In essence, by denying to plaintiff the right of recovery of the commission, the risk of loss of the bargain is placed on the broker, though he cannot protect himself against the loss, either by fire insurance (as the vendor and vendee may) or by a provision in the sales contract, since he is not a party thereto. This result seems both anomalous and unfair, as it fastens the loss on the person in the transaction least able to avoid it. Of course, protection against the contingency here involved could have been obtained by the simple and not unusual device of providing in the brokerage agreement that commissions were not to be deemed earned until title closed. By failing to so provide, however, the defendants voluntarily assumed the risk that the sale might not be consummated because of fire; and, in consequence, they are, in my opinion, liable to pay plaintiff's commission (cf. *O'Hara* v. *Bronx Consumers Ice Co.,* 254 N. Y. 210, 215–216; *Stanton* v. *Spearman,* 16 A D 2d 837; *Epstein* v. *Gosseen,* 235 App. Div. 33).