COUGHLAN & COMPANY, INC., Respondent, v. LOUIS FRANKEL, Appellant.

First Department, May 7, 1926.

Brokers — real estate broker — action to recover commission — answer alleges that payment was to be made one-half when purchaser signed contract and one-half when title was closed — purchaser signed binder but refused to complete purchase — defendant recovered damages from purchaser — conditions of postponement of payment if any were met when purchaser was required to pay damages — plaintiff is entitled to summary judgment under Rules of Civil Practice, rule 113.

In an action by a real estate broker to recover a commission for the sale of certain real property in New York city, the plaintiff is entitled to summary judgment under rule 113 of the Rules of Civil Practice, notwithstanding the defense that one-half of the commission was to be paid when the contract of sale was signed and one-half when the title was closed, for it appears that the prospective purchaser signed a binder and on his refusal to complete the purchase the defendant owner secured a judgment against the purchaser for the damage sustained by the purchaser's failure to complete the purchase, thereby giving the defendant the full advantage of the sale brought about by the plaintiff.

The conditions precedent to the payment of the commission, assuming that the answer states the exact situation, were fully met by showing that the prospective purchaser though he had not signed a formal contract was held in damages in an action by the defendant, the owner of the property, and was compelled to pay to the defendant the difference between the purchase price agreed on and the price received on a resale of the property.

MERRELL and FINCH, JJ., dissent, with opinion.

APPEAL by the defendant, Louis Frankel, from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 25th day of June, 1925, affirming an order of the City Court of the City of New York, granting summary judgment to the plaintiff under rule 113 of the Rules of Civil Practice, and affirming the judgment entered pursuant to said order.

*Stewart Engel* [*Emanuel Sustick* of counsel], for the appellant.

*Maguire & Martin* [*Samuel Sturtz* of counsel], for the respondent.

MARTIN, J. The plaintiff, a real estate broker, brought this action to recover $1,500 for effectuating a sale of real property in the city of New York for defendant Louis Frankel, as vendor, to Alexander Watterson, as purchaser.

There is no dispute as to plaintiff's having been duly licensed, as to the employment, the agreed amount of the brokerage and that plaintiff procured a prospective purchaser and brought the parties together. However, they signed a binder which, though sufficient in itself, contemplated a formal contract.

The amended answer alleges a defense which in part is as follows: " It was agreed between the plaintiff and defendant herein that the commission was to be the sum of $1,500 payable in the manner following: $750 at the time and when a formal contract was made by said A. Watterson on November 20th, 1923, as provided for in the acceptance of November 14th, 1923, and only in case the balance of the money to be paid on the signing of the contract, to wit, $2,500, was paid, and in case of the signing of such contract the balance of $750 was to be paid on the closing of title; that upon this definite understanding between the plaintiff and defendant herein, the said acceptance was signed by the defendant herein."

It is alleged that Watterson refused to sign the formal contract or to pay the balance of the $2,500 payment; that he began an action, which at the time of the amendment of the answer was still pending, for the recovery of $500 paid on the binder; and that by reason of the failure of said Watterson to sign a formal contract and his " failure to pay the balance of $2,500 as provided for in the acceptance, dated November 14th, 1923, the said plaintiff herein, in view of the agreement had between defendant and plaintiff, was not entitled to any commission."

It is to be noted that the conditions to the obligation to pay the brokerage thus alleged are the purchaser's signing the formal contract and his making payment of the remainder of the $2,500 which was to be paid on contract. The reference to the time of closing might indicate a postponement of the time of payment of half of the agreed commission, but it does not indicate closing of title as a condition to the commission being earned. Nor does the record indicate that defendant might be able to show there was such a condition.

On the papers presented, it is necessary to go very far in defendant's favor to find that there might have been some special agreement as to commission such as the amended answer suggests. However, this is immaterial in view of the subsequent proceedings.

The plaintiff did procure a person willing to purchase the property,

said Watterson, who signed the writing dated November 14, 1923, providing for a sale for $142,000 subject to mortgages, all of the terms being specifically set forth, a copy of this agreement being attached to the amended answer.

The moving affidavit shows that the defendant in this case brought an action and recovered a judgment in the Supreme Court, New York county, against the purchaser, Watterson, upon the binder as a contract of sale. The recovery was for damages growing out of the breach of that contract, being the difference between the contract price of $142,000 and a resale price of $138,250. This is evidenced by the complaint in that action to which was attached a copy of the agreement of sale. The jury credited the payment of $500 and rendered a verdict for $3,250 upon which a judgment was entered. These facts are conceded.

If we assume there was an agreement that the payment of the brokerage was to be postponed as indicated above, an arrangement denied by plaintiff and not really supported for defendant, as pointed out at the Appellate Term, defendant availed himself of the binder as a contract, and, it might be added, successfully so in his action against the purchaser. The agreement alleged in the answer could not be interpreted to mean that the brokerage would not be paid if it became unnecessary to have a formal contract. As to the part of the broker's compensation to be paid on consummation of the contract it is established by the affidavits that there was no special agreement such as might possibly relieve defendant from payment of that part of the brokerage despite the fact that defendant enforced the contract in the action against the purchaser.

The plaintiff appears to have been employed without reservation on September 5, 1923, to sell property belonging to defendant. That he secured a purchaser ready, able and willing to purchase at the terms offered is not denied and is shown by the written contract signed by the parties November 14, 1923. When plaintiff secured such a purchaser he also earned his commissions under the terms of his employment especially in view of the fact that the contract of sale was afterwards enforced by the court giving the defendant the benefit of the contract and plaintiff's services. (*Belmar Contracting Co.* v. *State of N. Y.,* 194 App. Div. 69, 73; *Strout Farm Agency, Inc.,* v. *De Forest,* 192 id. 790.)

The determination should be affirmed, with costs.

CLARKE, P. J. and DOWLING, J., concur; MERRELL and FINCH, JJ., dissent.

MERRELL, J. (dissenting). The plaintiff is a domestic corporation engaged in business as a real estate broker in the borough

of Manhattan, New York city, duly licensed to act as such by the Tax Commission of the State of New York. The action was brought to recover the sum of $1,500 as commissions claimed by the plaintiff for procuring the sale of certain real property located at 574–578 West One Hundred and Sixty-first street, in the borough of Manhattan, New York city. The amended answer of the defendant put in issue the material allegations of the complaint, and, as a separate and distinct defense, alleges that on or about November 14, 1923, one A. Watterson, the purchaser whom the plaintiff claims to have secured for the premises in question, executed an acceptance agreement to purchase said premises pursuant to certain terms stated therein. The alleged acceptance agreement, a copy of which is annexed to the amended answer, is in the following form:

" *November 14th,* 1923.

" Mr. L. Frankel,

    " 264 5th Ave., New York.

    " Dear Sir.— I hereby accept your terms on premises 574–8 West 161st Street, as submitted to us, by your agents, Coughlan & Co., Inc., as follows:

    " Price $142,000.00, subject to 1st mortgage $75,000.00 at $5\frac{1}{2}\%$ due 1928, standing second mortgage of $22,000.00 at 6% due 1930, payable $4,000.00 1st and 2nd year; $3,000.00, the 3rd and 4th years, and $2,000.00 yearly for the balance of the term, and . my purchase money mortgage for $13,000.00, for 3 years at 6%, to be payable $1,000.00 per year, and $32,000.00 cash. Taxes, interest on mortgages, rents, insurance premiums, etc., to be apportioned as of the time of passing title. I am handing you herewith check for $500 as a binder and is to be applied to the $3,000.00 to be paid on the signing of the contract, balance of cash to be paid upon taking title, December 15th or sooner at my option. Rents are guaranteed to be as not less than $22,698.00. Contract to be signed not later than Tuesday, Nov. 20, 1923.

    " A. Watterson      [Signed]      A. WATTERSON

                                     " LOUIS FRANKEL."

The defendant further alleges in his said separate and distinct defense that before the signing of said instrument it was agreed between the plaintiff and the defendant that the commission was to be the sum of $1,500, payable as follows: $750 at the time when a formal contract was made by said Watterson on November 20, 1923, as provided for in said acceptance agreement, and only in case the balance of the money to be paid on the signing of the contract, to wit, $2,500, was paid, and in case of the signing of such contract, the balance of $750 was to be paid on the closing

of title, and that upon such definite understanding between the plaintiff and the defendant the said acceptance agreement was signed by the defendant herein.  The defendant further alleges that up to and including November 20, 1923, the said Watterson, introduced by the plaintiff herein, failed, refused and neglected to sign the said contract, which was duly tendered to him, and failed and refused to pay the balance of $2,500, as provided for in said acceptance, and has failed, refused and neglected to sign a formal contract for the purchase of the said premises, and failed to pay the balance of the $2,500 agreed upon.  Defendant further alleges that thereafter the said Watterson commenced an action in the Municipal Court of the City of New York wherein he sought to recover the sum of $500 deposited on the signing of the said acceptance agreement on November 14, 1923, and that said action is still pending and undetermined in the Municipal Court.  Defendant alleges that by reason of the failure of said Watterson to sign a formal contract and because of his failure to pay the balance of $2,500, as provided in the acceptance agreement of November 14, 1923, the plaintiff, under the agreement between it and the defendant, was entitled to no commission.

Upon the pleadings the plaintiff moved to strike out the defendant's answer as sham, and for judgment under rule 113 of the Rules of Civil Practice, and the City Court granted its motion, and the judgment aforesaid in plaintiff's favor was entered thereon. Upon appeal the Appellate Term, by a divided court, one justice dissenting, affirmed the order of the City Court.

It appears from the acceptance agreement, executed by the defendant on November 14, 1923, that said instrument was regarded only as a binder, and that the execution of a formal contract for the purchase of the premises was to be thereafter entered into not later than Tuesday, November 20, 1923.  In his answer the defendant alleges that the commission, which the plaintiff was to receive for procuring a purchaser of the premises, was agreed to be paid in installments as follows: $750 at the time when a formal contract was made by the purchaser on November 20, 1923, and only in case the balance of the money to be paid on the signing of the contract, to wit, $2,500, was paid, and, in case of the signing of said contract, the balance of $750 of said commission was to be paid on the closing of title.

George W. Coughlan, the president of the plaintiff, in his affidavit denies the allegation of the defendant as to the method and time of payment of the commission, and avers that no such agreement was made between the affiant, who conducted the transactions with the defendant on behalf of the plaintiff, and defendant, and that

no such subject-matter was ever discussed between the plaintiff and the defendant. The plaintiff's president, however, distinctly states in his affidavit that the commission of $1,500 he, " on behalf of the plaintiff agreed to accept with the understanding that the commissions were to be paid when the formal contract was signed on November 20, 1924." (The year " 1924 " as stated in the record on appeal was evidently a misstatement, the affiant intending to state the year as " 1923.") The plaintiff's president attaches to his affidavit a copy of a letter written by the plaintiff to the defendant, under date of November 13, 1923, confirmatory of a telephone conversation had that day, wherein the plaintiff states the defendant had accepted the terms of Watterson's offer submitted on the twelfth instant. The terms of the purchase of the real property in question are then stated in this letter. The said letter of the plaintiff closes with this statement:

" And also, that you have agreed to pay us $1,500 commissions on the signing of the contract.

" The writer will communicate with you tomorrow the 14th inst., to arrange for the closing of the contract."

It thus appears, not only from the allegations of the defendant's answer, but also from the averments contained in the affidavit of the plaintiff's president and its letter of November thirteenth, that the commission which the plaintiff was to receive was to be paid only upon the signing of the formal contract on November 20, 1923. Such contract was never signed.

The plaintiff contends that the acceptance agreement had all the necessary elements of a formal contract and was enforcible as such, and that subsequently the defendant brought action against Watterson thereon and recovered judgment against the would-be purchaser in the sum of $3,363.30. The plaintiff argues that having brought such action the defendant treated the acceptance agreement as a valid contract of sale and was, therefore, bound to pay the plaintiff its commission. The answer to this contention, however, lies in the fact that the action was not brought to compel specific performance of the acceptance agreement as a contract of sale, but was *to recover damages suffered by the plaintiff* (defendant herein) *by reason of Watterson's failure to enter into the formal contract* for the purchase of the premises in accordance with his agreement of November 14, 1923.

I think the allegations of the plaintiff's complaint are clearly negatived by the admission in the affidavit of its president and in its letter of November 13, 1923, and that it unequivocally appears therefrom that the plaintiff's commission was dependent upon the execution of a formal contract of purchase and sale, which was to

be entered into on the 20th day of November, 1923. The would-be purchaser refused to enter into such formal contract and, therefore, the condition never occurred entitling the plaintiff to commissions. It is clear that the parties never regarded the acceptance agreement as a formal contract, and it is just as clear that at the time it was executed the parties contemplated the execution of a formal contract on November 20, 1923. The fact that the parties contemplated the execution of a formal contract shows that they did not intend the acceptance agreement to be binding as such a contract. (*Sherry* v. *Proal,* 131 App. Div. 774.) There are absent from the acceptance agreement many of the usual covenants contained in the ordinary contract of sale of real property in the city of New York. As was said in *Sherry* v. *Proal* (*supra,* 778) as showing that a formal agreement was intended: " Especially was there no agreement as to * * * what covenants and conditions should be incorporated into the lease." And (at p. 779) the court said in the same case: " Whether or not the written lease, which plaintiff says he prepared, contained other differences from the old lease, we have no means of knowing. What we do know is that it was the evident intention of both parties that a formal written lease should be executed, and that there were many details which it would be proper to incorporate in such a lease, which were not even discussed, much less agreed to, * * *."

In the recent case of *Watson* v. *Muskegon Steamship Corp.* (208 App. Div. 158), decided by this court, the plaintiff was suing for a commission which was to be paid upon the " consummation of the purchase and sale." In that case the purchaser refused to perform and the seller brought action for damages. The same claim was made in that case as here, that by the recovery of damages the defendant, as seller, secured the benefit contemplated by the contract procured by the broker, and that, therefore, the latter was entitled to his commission. This court, upon the specific language of the agreement as to when the commission was earned, overruled the claim of the plaintiff, this court, per FINCH, J., saying (at p. 160), " the plaintiff ignores the fact that the very question at issue in the case at bar is whether the plaintiff has expressly contracted that he is only to be paid a commission in the event of a certain contingency," which contingency was the " consummation of the purchase and sale." In the case at bar the defendant contends that the contingency upon which the plaintiff was entitled to its commission was the execution of the formal contract for the purchase of the premises. It seems to me we are bound by our decision in *Watson* v. *Muskegon Steamship Corp.* (*supra*).

The defendant's answer alleges that the plaintiff's commission

only became payable if and when the down payment of $3,000 was made by the purchaser on the signing of the formal contract. It is conceded that this $3,000 was never paid. In his answer the defendant alleges that the $3,000 was to be the down payment in the transaction. The letter of November 14, 1923, signed by Watterson and by the defendant, as seller, contains the following statement: " I am handing you herewith check for $500 as a binder and is to be applied to the $3,000.00 to be paid on the signing of the contract, * * *." In its letter to the defendant of November 13, 1923, the plaintiff states verbatim the above-quoted provision of the arrangement. The $500 was paid at the time of the signing of the binder agreement, but the $2,500 balance of the down payment was concededly never paid. In his affidavit in support of plaintiff's motion to strike out the defendant's answer and for summary judgment, plaintiff's president states that in the same conversation between him and the defendant the latter stated that if the purchaser, Watterson, would pay only $1,000 or $1,500 on the contract, that the defendant was not inclined to pay the full amount of $1,500 at the time when the contract was signed, and that thereupon the plaintiff's president stated: " If I can get you $3,000 paid on the contract, would that be satisfactory? " That thereupon the defendant said that if that amount was paid on the contract, he would pay the commission of $1,500 to the plaintiff at that time. Confirmatory of that conversation the plaintiff wrote the letter of November 13, 1923. The defendant never received the $3,000 upon the contract or any part thereof, save the payment of $500 made upon the execution of the acceptance agreement. It thus appears that not only were plaintiff's commissions dependent upon the execution of a formal contract, but also upon the full down payment of $3,000 upon such contract.

I am of the opinion that, under the circumstances presented upon this appeal, the City Court improperly struck out the amended answer of the defendant, and that the determination of the Appellate Term should be reversed, with costs to the appellant in this court and in the Appellate Term, the judgment of the City Court reversed, with costs, and plaintiff's motion for summary judgment denied, with ten dollars costs.

FINCH, J., concurs.

Determination affirmed, with costs.